LIESINGER v. OWEN-AMES-KIMBALL COMPANY.

Decision of the Court.

1. Workmen's Compensation—Boilermaker—Total and Permanent Disability—Set Off of Current Earnings.

Employee who became totally and permanently disabled for his work as boilermaker because of loss of use of both legs but who was employed thereafter as shop welder *held,* entitled to recover additional benefits for such disability from defendant employer and second injury fund, with current earnings being set off in determining employer's liability and such earnings set off in determining liability of second injury fund upon expiration of 800 weeks from date of injury (CLS 1956, §§ 412-.9, 412.10; CL 1948, § 412.11).

---

References for Points in Headnotes

[1, 3–9] 58 Am Jur, Workmen's Compensation § 281 *et seq.*
Workmen's compensation: crediting employer or insurance carrier with earnings of employee re-employed, or continued in employment, after injury. 175 ALR 725, 84 ALR2d 1108.
[2] 58 Am Jur, Workmen's Compensation §§ 283, 287–291.
What amounts to total incapacity within workmen's compensation acts. 67 ALR 785, 98 ALR 729.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ.

2. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
BOILERMAKER—LEG INJURY.

> Plaintiff, a skilled boilermaker, who suffered such severe spinal
> injuries in 1950 industrial accident as to lose effective control
> of his body from hips to toes, should have been found, under
> decisions of the Supreme Court and law as of date of injury,
> to be totally and permanently disabled and entitled to work-
> men's compensation therefor from employer and its insurer,
> since he had lost the industrial use of both legs (CL 1948,
> § 412.9, as amended by PA 1949, No 238).

3. SAME—BOILERMAKER—TOTAL AND PERMANENT DISABILITY—SET
OFF OF EARNINGS AS SHOP WELDER.

> Plaintiff, a skilled boilermaker who suffered such severe spinal
> injuries in industrial accident in 1950 as to lose effective control
> of his body from hips to toes, was entitled to 750 weeks of
> workmen's compensation from his employer, for total and per-
> manent disability, such compensation being subject to reduction
> depending upon plaintiff's current earnings from employment
> as shop welder (CL 1948, § 412.9, as amended by PA 1949, No
> 238; § 412.11).

4. SAME—DIFFERENTIAL PAYMENTS—SECOND INJURY FUND.

> Plaintiff became entitled to differential benefits from second
> injury fund as of effective date of statute amending workmen's
> compensation act according same, where he was receiving com-
> pensation for total and permanent disability for a 1950 in-
> jury at rates that were lower and shorter in duration than
> amendatory act also provided (CL 1948, § 412.9, as amended by
> PA 1956, No 195).

5. SAME—CONCLUSIVE PRESUMPTION OF DISABILITY—DIFFERENTIAL
PAYMENTS.

> The statutory conclusive presumption that persons who had lost
> the industrial use of both legs were totally and permanently
> disabled entitled them to differential payments from the second
> injury fund after its effective date for a period of 800 weeks
> from date of injury such payments being the difference be-
> tween full current payments of workmen's compensation as
> then accorded by statute and amount for which liability had
> been imposed upon defendant employer and its insurer, current
> earnings of the employee being set off against the employer's
> liability but not against the differential payments imposed

against the second injury fund (CL 1948, § 412.9, as amended by PA 1956, No 195; § 412.11).

6. SAME—CONCLUSIVE PRESUMPTION OF DISABILITY—SECOND INJURY FUND—TERMINATION OF EMPLOYER'S LIABILITY.

*Employee who is, by statute, conclusively presumed to be totally and permanently disabled by reason of having lost the industrial use of both legs, is entitled to full benefits at then current rates for last 50 weeks of 800-week period from date of 1950 accident from second injury fund, since the employer's liability for payments of workmen's compensation for such accident expired at end of 750 weeks (CL 1948, § 412.9, as amended by PA 1949, No 238, and PA 1956, No 195).*

7. SAME—TOTAL AND PERMANENT DISABILITY—EARNINGS.

*Whether an employee's injury continues to be total and permanent after expiration of 800 weeks from date of injury will again become a question of fact, and, if found to continue, would entitle him to benefits from the second injury fund at then current rates, but subject at that time to set off of current earnings, the conclusive presumption no longer being applicable (CLS 1956, §§ 412.9, 412.10; CL 1948, § 412.11).*

DISSENTING OPINION.

DETHMERS, KELLY, and O'HARA, JJ.

8. WORKMEN'S COMPENSATION—PERMANENT LOSS OF USE OF BOTH LEGS—EARNINGS.

*Employee who was so injured while at work as to lose permanently the use of both legs held, entitled to maximum award of compensation for 750 weeks from employer and its insurer from date of injury regardless of the income he can earn despite the injury (CLS 1956, §§ 412.9, 412.10).*

9. SAME—BOILERMAKER—AMENDMENT OF STATUTE—TOTAL DISABILITY—LOSS OF INDUSTRIAL USE—SECOND INJURY FUND.

*Amendatory act which enlarged the definition of total and permanent disability to include loss of industrial use of specified members of the body as well as loss by amputation entitled the injured employee, a boilermaker, to differential benefits from second injury fund in amounts and number of weeks of compensation for injury to both legs which occurred before the amendment became effective (CL 1948, § 412.9, as amended by PA 1956, No 195).*

Appeal from Workmen's Compensation Appeal Board. Submitted April 7, 1965. (Calendar No. 2, Docket No. 50,617.) Decided February 8, 1966.

John Robert Liesinger, after receipt of compensation for total disability, presented a claim for additional benefits for industrial loss of the use of both legs against Owen-Ames-Kimball Company and Michigan Mutual Liability Company. Additional award affirmed by the workmen's compensation appeal board. Defendants appeal. Award vacated for additional payments from second injury fund.

*Vander Veen, Freihofer & Cook,* for plaintiff.

*LeVasseur, Werner, Mitseff & Brown,* for defendants.

Souris, J. Plaintiff, a skilled boilermaker employed by defendant Owen-Ames-Kimball Company, suffered severe spinal injuries in an industrial accident in April, 1950. Since the accident he no longer has effective control of his body from his hips to his toes. Resumption of his skilled employment as a boilermaker is out of the question. Yet, by his own efforts since his injury, he has acquired the skills of a shop welder, an occupation he can perform, for a sympathetic employer, while seated.

At the time of plaintiff's injury, section 9, part 2[1] of our workmen's compensation law, provided that while an injured employee's incapacity for work in the employment in which he was injured was total, during the 500-week period following injury such injured employee was entitled to weekly compensation benefits of 66-2/3% of his average weekly

---

[1] CL 1948, § 412.9, as amended by PA 1949, No 238 (Stat Ann 1950 Rev § 17.159).

wages before the injury, but not more than $32 if the injured employee had four dependents, as did Mr. Liesinger. While plaintiff's preinjury average weekly wages in 1950 were about $100, because of the limitation upon maximum weekly benefits payable stated in the statute, he never was entitled to receive more than $32 during any week of the 500-week period. Furthermore, section 11, part 2[2] of the workmen's compensation law provided in 1950, as it does today,[3] that weekly compensation benefits otherwise payable under the act be reduced to the extent that an injured employee's post-injury weekly earnings from *any* employment when added to the compensation benefit payable exceed his preinjury average weekly wage.

During about one-half of the first 500 weeks following his injury, during which time plaintiff would have been entitled to the benefits provided by section 9, plaintiff was gainfully employed at wages roughly equivalent to those he earned as a boilermaker. Accordingly, because of the set-off provision of section 11, defendants, plaintiff's former employer and its workmen's compensation insurance carrier, were obliged to pay plaintiff for *total* incapacity for work, pursuant to section 9, weekly benefits aggregating only $8,000, notwithstanding the severity of his injuries, and which benefits they paid voluntarily. At the expiration of the 500-week period, plaintiff sought an order from the workmen's compensation department entitling him to additional benefits in the future as provided by the same section of the act for total and *permanent* disability.

After an evidentiary hearing in 1962, a referee of the workmen's compensation department ordered de-

---

[2] CL 1948, § 412.11 (Stat Ann 1950 Rev § 17.161), as pertinently amended by PA 1927, No 376.

[3] CLS 1961, § 412.11, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.161).

fendants to pay plaintiff benefits of $32 for an additional 250-week period, the referee ruling that plaintiff's injury resulted in the loss of industrial use of both his legs and that, therefore, he was totally and permanently disabled. Upon appeal by plaintiff, for the referee's failure to order differential benefit payments from the second injury fund pursuant to section 9, as amended by PA 1955, No 250, the appeal board affirmed, after reducing the weekly benefit rate to $30 from November, 1959, and $28 from January, 1961, to reflect changes in the number of plaintiff's dependents and after noting in its opinion that differential benefit payments are payable from the second injury fund automatically without need for application therefor.

Both the referee and the appeal board determined the plaintiff's benefit rate and the additional 250-week period he was entitled to receive such benefits on the basis of the statute as it read in 1950 at the time of his injury. The appeal board, however, in its opinion stated that its determination that plaintiff was totally and permanently disabled was based upon the statutory definition of total and permanent disability, a definition first added as subsection (7) to section 10, part 2[4] of our workmen's compensation law by PA 1956, No 195. The complete definition, including subsection (7), reads as follows:

"Total and permanent disability, compensation for which is provided in section 9 hereof, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

[4] CLS 1961, § 412.10 (Stat Ann 1960 Rev § 17.160).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

In addition, the appeal board rejected the defendants' contention that weekly benefits should be reduced or omitted entirely, depending upon plaintiff's current earnings, presumably by virtue of section 11, above described. The appeal board said that such set-off requirement would be applicable only if plaintiff's total and permanent disability were a question of fact to be determined from time to time, as it would have been under section 10 until its amendment by PA 1954, No 175.[5] Having found that plaintiff Liesinger was totally and permanently disabled by virtue of his "permanent and total loss of industrial use of both legs", within the meaning of subsection (7) added to section 10 by PA 1956, No 195, and applying the "conclusive presumption" of permanent and total disability for those injured employees meeting the definition thereof contained in section 10, which conclusive presumption was

---

[5] Before its amendment by PA 1954, No 175, section 10 provided, *inter alia*, that "The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof, shall constitute total and permanent disability, to be compensated according to the provisions of section 9," but it did not exclude other causes of total and permanent disability *in fact*, for example, by virtue of insanity resulting in 1943 from inhalation of coke gas while working, *Springer* v. *Reed Foundry & Machine Company* (1956), 346 Mich 11. See, also, *Edwards* v. *Michigan Light Alloys Corporation* (1956), 346 Mich 169. By the 1954 amendment total and permanent disability was defined to mean only those losses set forth in the first six subsections quoted above in the text and supplemented in 1956 by the addition of subsection (7). See *Verberg* v. *Simplicity Pattern Co.* (1959), 357 Mich 636.

added to section 9 by PA 1955, No 250,[6] the appeal board concluded that plaintiff was entitled to weekly benefits without regard to his current earning capacity in any employment, but only for an additional period of 250 weeks. In short, to the plaintiff's 1950 injury, the appeal board applied the 1956 statutory definition of total and permanent disability (loss of industrial use of both legs) and the 1955 "conclusive presumption" of continuing disability, but limited that "conclusive presumption" to 750 weeks from the date of injury, the period for which any such additional benefits were payable as the act read in 1950, and limited the additional benefits payable by defendants to those provided for in 1950.

The effect of the appeal board's decision, from which defendants have appealed, is that defendants would be required to pay plaintiff benefits for an additional 250-week period at 1950 benefit rates, without diminution regardless of his current wages earned in other employment, and, in addition, plain-

---

[6] Before PA 1955, No 250, section 9 provided for up to 500 weeks of benefits for injured employees while their incapacity for work in the employment in which they were injured was total. In addition it provided that if such disability (total incapacity for work in the employment in which they were injured) were also permanent, benefits could be extended for 250 weeks, as of 1950, and 300 weeks after PA 1953, No 198. In a series of decisions culminating with *Geis* v. *Packard Motor Car Co.* (1921), 214 Mich 646, this Court had construed the act to require payment of full benefits so long as the injured employee was incapacitated for work in the employment in which he was injured notwithstanding his capacity to earn substantial wages in other employment. By PA 1927, No 376, section 11, part 2 of the act was amended to require setting off wage-earning capacity "in the same or another employment" against benefits awarded under the act.

PA 1955, No 250 for the first time also incorporated into section 9, part 2, the concept of a "conclusive presumption" of permanent and total disability for at least 800 weeks from the date of injury, thereby requiring payment of full benefits during such period to those employees found to be totally and permanently disabled within the meaning of the definition thereof contained in section 10 and without regard to their current earning capacity, in the same fashion that full benefits were payable, without regard to current earning capacity, to those injured employees suffering specific losses also defined in section 10.

tiff would be entitled to receive from the second injury fund weekly differential payments in the amount of the difference between the 1950 benefit rate and the current benefit rate payable for total and permanent disability.

In their appeal defendants challenge the appeal board's application of the 1956 definition of total and permanent disability and the 1955 "conclusive presumption" of its duration, regardless of current earnings, to plaintiff's 1950 injury. Finally, defendants contend that if plaintiff is entitled to any additional benefits, the full amount should be paid by the second injury fund and not by them.

As I read the statute and our decisions construing it, the appeal board erred in applying the 1956 and 1955 amendments in defining the nature of plaintiff's disability and in applying the "conclusive presumption" of his incapacity. I do *not* conclude, however, that plaintiff is barred from receiving additional benefits, nor do I conclude that such additional benefits are payable exclusively by the second injury fund.

Plaintiff's entitlement to recovery of additional benefits for total and permanent disability beyond 500 weeks from the date of his injury does not depend[7] upon application of the 1956 statutory definition thereof to include loss of industrial use of both legs. Plaintiff Liesinger should have been found to be totally and permanently disabled within the mean-

[7] In *Clark* v. *Chrysler Corporation*, 377 Mich 140, claimant's entitlement to total and permanent disability benefits did depend upon the 1956 amendment because his injury occurred in November, 1954, at a time when, after PA 1954, No 175 and before PA 1956, No 195, loss of industrial use of both legs, other than by amputation or complete paralysis, was not a total and permanent disability as that term was expressly defined by the 1954 amendment of the act. It was my conclusion, in *Clark*, that the legislature could provide, as I found it did, for reclassification of injuries which occurred prior to the amendatory act without violation of any constitutional provisions. See *Lahti* v. *Fosterling* (1959), 357 Mich 578, and authorities relied upon therein.

ing of our law as it read in 1950. Our prior decisions compel that conclusion.

Section 10 provided then, as it does now,[8] for the payment of weekly benefits for specified periods for certain specific losses—losses of thumbs, fingers, toes and phalanges thereof, hands, arms, feet, legs, and eyes. Those specific loss provisions were construed by this Court to mean that the compensation provided was payable whether a hand, for example, was amputated as the result of an industrial injury or so severely injured that there was loss of industrial use of the hand. See *Shumate* v. *American Stamping Company* (1959), 357 Mich 689; *Lentz* v. *Mumy Well Service* (1954), 340 Mich 1; *West* v. *Postum Co., Inc.* (1932), 260 Mich 545; and *Lovalo* v. *Michigan Stamping Co.* (1918), 202 Mich 85.

The same section then provided, prior to its amendment by PA 1954, No 175, that the loss of both hands, arms, feet, legs, or eyes, or any two thereof constituted total and permanent disability, but did not limit such disability only to such losses. See *Verberg* v. *Simplicity Pattern Co.* (1959), 357 Mich 636. That provision was construed, in *Rench* v. *Kalamazoo Stove & Furnace Co.* (1938), 286 Mich 314, to support an award for total and permanent disability on the basis of a factual finding that the claimant suffered loss of industrial use of both his hands, neither of which was amputated, but each of which was so badly injured that claimant was unable to grip with either hand.

Thus, even without reliance upon subsection (7) which was added to section 10 by PA 1956, No 195, upon which the appeal board erroneously relied, plaintiff was entitled to the appeal board's finding that because he had lost the industrial use of both his legs he was totally and permanently disabled

---

[8] Currently CLS 1961, § 412.10, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.160).

within the meaning of the act as it read in 1950. The evidence in support of the appeal board's finding was quoted in its opinion from the report of Dr. Klemperer of Seattle, Washington:

" 'Marked weakness in both lower extremities, about 20–25 per cent of retained function in left and about 10–20 per cent retained function in right, and this function is almost completely negated by severe spasticity, right more than left, affecting entire leg from hip on down.' "

Accordingly, I would hold that the appeal board should have found plaintiff entitled to payment *from defendants* of additional benefits for total and permanent disability for a period of 250 weeks after expiration of 500 weeks from the date of plaintiff's injury and at the weekly benefit rate provided by the act in 1950, but subject to the set-off for current earnings from any employment required by section 11. See *Markey* v. *S.S. Peter & Paul's Parish* (1937), 281 Mich 292; *Satawa* v. *L. A. Young Spring & Wire Corp.* (1943), 304 Mich 264; *Parling* v. *Motor Wheel Corporation* (1950), 324 Mich 420; and *Lynch* v. *Briggs Manufacturing Company* (1950), 329 Mich 168.

Although I conclude that the 1956 amendment of the statutory definition of total and permanent disability of section 10, to include loss of industrial use of both legs, hands, arms, or any two thereof, should not have been utilized by the appeal board as the basis for determining plaintiff's entitlement to additional benefits for total and permanent disability, that portion of the 1956 amendment, in my view, is crucial to plaintiff's entitlement to differential benefit payments *from the second injury fund. Verberg* v. *Simplicity Pattern Co., supra.* I would hold that by the express provisions of section 9, as amended also by PA 1956, No 195, plaintiff became entitled to

differential benefit payments from the second injury fund as of August 1, 1956, the effective date of the 1956 amendment. The amended language of section 9 to which I refer reads as follows:

"Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits."

Unlike *Verberg, supra,* plaintiff's total and permanent disability, as found under the law as it read in 1950, also fit the definition of total and permanent disability contained in 1956 in section 10 and, because he otherwise qualified, plaintiff Liesinger, unlike plaintiff Verberg, was entitled to receive differential benefit payments from the second injury fund after the effective date of the 1956 amendatory act, August 1, 1956. He otherwise qualified for such second injury fund payments because on June 25, 1955, he was entitled to receive payments for total and permanent disability at 1950 rates which were lower than those provided by the 1956 amendment and for

a lesser number of weeks than the duration of his total and permanent disability.

Furthermore, as I read the statutory language, nothing contained in the amendments can be construed to enlarge the defendants' liability beyond its 1950 limit. Thus, whenever plaintiff's current earnings from any employment require, under section 11, diminution or cancellation of benefit payments from defendants, such adjustment should be made as between plaintiff and defendants. However, plaintiff then would be entitled to payment from the second injury fund of an amount necessary to provide him with total payments equal to full benefits at current rates notwithstanding his current earnings. This is so because, as amended, section 9 granted totally and permanently disabled claimants not only differential benefit payments from the second injury fund but, as well, created a "conclusive presumption" of total and permanent disability for those meeting the statutory definitions of sections 8a[9] and 10, thus relieving such claimants from the set-off provisions of section 11. But such "conclusive presumption" cannot be applied to enlarge defendants' liability, at least absent a clearer manifestation of the legislature's intent to do so than appears in the amended act. Thus, whenever defendants' weekly liability is reduced or canceled under section 11 because of the level of plaintiff's current earnings, the difference must be paid plaintiff from the second injury fund during the 250 weeks of defendants' continuing liability. Thereafter, for another 50-week period, which ends 800 weeks after the date of injury, the conclusive presumption will require payment of the entire current benefit rate exclusively by the second injury fund and still without regard to plaintiff's current earnings from any employment.

9 CLS 1961, § 412.8a (Stat Ann 1960 Rev § 17.158[1]).

Upon expiration of 800 weeks from date of injury, whether plaintiff's injury continues to be total and permanent again will become a question of fact. If it then is found to continue, benefits at then current rates will be payable from the second injury fund, but subject at that time once again to the set-off requirements of section 11, part 2.

*To summarize:* The appeal board should have ordered defendants to pay plaintiff weekly benefits at 1950 rates for 250 additional weeks, but subject to diminution or cancellation depending upon plaintiff's current earnings from any employment as provided in section 11, part 2 of the act. In addition, the appeal board should have ordered payments from the second injury fund of differential benefits until expiration of the aforesaid 250-week period and for 50 weeks more, said differential benefits to be so computed that regardless of the weekly amount, if any, required to be paid by defendants under the law as it read in 1950, and regardless of plaintiff's current earnings, plaintiff will receive from defendants and the second injury fund, or from the second injury fund alone, total weekly benefits at current compensation rates.

I would vacate the order entered by the appeal board and remand this cause for entry of an order in conformance with this opinion. I would allow costs to plaintiff.

T. M. KAVANAGH, C. J., and SMITH, and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J., concurred in result.

KELLY, J. (*dissenting*). Appellants and appellee agree upon the following statement of facts:

"On April 13, 1950, the plaintiff, employed as a boilermaker at a weekly wage of $100, lost his bal-

ance while working on a scaffold, fell, and suffered multiple injuries, including a skull fracture and compression fracture of the dorsal vertebra.

"Initial medical care was rendered by Carl List, M.D., at Grand Rapids, Michigan, with follow-up care given by Drs. Leavitt and Klemperer of Seattle, Washington, where the plaintiff moved to shortly after his accident. At the time of hearing, Mr. Liesinger was still under medical observation, seeing the doctor once or twice a year.

"While the injuries were serious, no conclusively presumed schedule loss, under the Michigan compensation law as then written, was involved.

"During the 500-week period, subsequent to date of injury, the plaintiff was paid compensation benefits pursuant to section 9, part 2,[1] of the Michigan compensation act during periods of total disability and pursuant to section 10, part 2,[2] when his wage at newly found employment in Seattle was less than his wage at time of injury.

"On July 8, 1959, Mr. Liesinger secured permanent and skilled employment at the Pacific Car & Foundry Company, Seattle, Washington, at a wage of $120 per week and has been steadily employed since that time.

"An application for hearing and adjustment of claim was filed on April 11, 1960, seeking additional benefits on the premise that the plaintiff had suffered the industrial loss of use of both legs.

"Following a hearing before the workmen's compensation department, an award was entered on June 2, 1962, granting plaintiff 750 weeks of compensation benefits pursuant to section 10, part 2, of the Michigan workmen's compensation law, as amended. This award was affirmed by the workmen's compensation appeal board on June 24, 1963 and in addition the order directed that supplemental benefits be paid the plaintiff from the second injury fund.

---

[1] CLS 1961, § 412.9 (Stat Ann 1960 Rev § 17.159).—REPORTER.
[2] CLS 1961, § 412.10 (Stat Ann 1960 Rev § 17.160).—REPORTER.

"From the award of the workmen's compensation appeal board, the defendants filed application for leave to appeal which was granted by this Court on December 5, 1963."

The main question appellants present in this appeal is whether the workmen's compensation appeal board failed to follow this Court's decision in *Verberg* v. *Simplicity Pattern Company,* 357 Mich 636, as is evidenced by the paragraphs in appellants' brief entitled "conclusion." The paragraphs read:

"The legislature enacted an amendment to the workmen's compensation act in 1956 which added to the categories of those to be entitled, as a matter of law, to total and permanent disability benefits, persons who are found to have suffered the industrial loss of use of arms or legs on a total and permanent basis.

"Defendants-appellants believe the appeal board erred in applying this classification retroactively and, indeed, is precluded from doing so by this Court's holding in *Verberg, supra.*"

A similar question was presented to this Court at the April 1965 Term (Docket No. 9) in *Clark* v. *Chrysler Corporation,* 377 Mich 140. In that case we held that *Verberg* did not apply; that the legislative amendment of 1956 adding to the categories of those entitled as a matter of law to total and permanent disability benefits should be applied retroactively, and that appellant should receive total and permanent benefits accordingly from the second injury fund.

Appellants in the instant case, however, raise an additional question not presented in the appeal of *Clark* v. *Chrysler Corporation,* appellants herein claiming:

"'The plaintiff, injured April 13, 1950, is not entitled to indemnity benefits pursuant to section 9 or section 10, part 2, of the workmen's compensation act, subsequent to the expiration of 500 weeks from date of injury, where he returns to and remains at gainful employment and establishes a wage-earning capacity well in excess of his wage at time of injury.'"

The record definitely establishes that both of plaintiff's legs are permanently and totally disabled. The fact that through his will power and initiative he has found another job requiring only the use of his hands, was commented upon by the appeal board as follows:

"It appears that for some time the plaintiff has by the use of initiative and acquired talents found employment, the performance of which can be satisfied by the use of his hands in so long as he is favored with the privilege of sitting down most of the working day. The defendant raises the question as to whether there should be an offset because of his present earnings. The foregoing contention could be of merit if the plaintiff's total and permanent disability was only a question of fact rather than being predicated upon his meeting the statutory definition of having suffered the loss of industrial use of both legs."

In *Shumate* v. *American Stamping Company,* 357 Mich 689, we held:

"An employee was entitled to an award for the specific loss of a hand less credit for prior payments, where the workmen's compensation appeal board found that his left hand had been rendered industrially useless by the injury received while at work in that its function was limited to that of an unsatisfactory pushing or pulling instrumentality, notwithstanding he was eventually able to work at same right-handed, job as press operator he had when injured." (Syllabus 2)

In situations such as we are faced with in this appeal, we interpret the workmen's compensation act that once a finding of permanent disability is established an employee is entitled to the full 750 weeks of compensation from the date of the injury regardless of the income he can earn despite the injury.

In proposing to affirm the appeal board's opinion and order that plaintiff is entitled to the payment of differential benefits from the second injury fund, we repeat what we stated in *Clark* v. *Chrysler Corporation, supra* (p 156):

" 'By PA 1956, No 195, the legislature enlarged the definition of total and permanent disability to include loss of industrial use, as well as loss by amputation. The same amendatory act provided that persons who had these injuries *before* the amendatory act, and on or after June 25, 1955, should be entitled to differential benefits in amounts of compensation and in the number of weeks of compensation. We believe the legislative plan was to give the enlarged benefits to those who prior to the amendatory act did not qualify as totally and permanent[ly] disabled, and that these enlarged benefits should come from the second injury fund. The coupling of these two changes in the same amendatory act compels the conclusion.' "

The order of the workmen's compensation appeal board should be affirmed, with costs to appellee.

Dethmers and O'Hara, JJ., concurred with Kelly, J.