JOHNSON v HARNISCHFEGER CORPORATION (ON REMAND)

Docket No. 46342. Submitted July 26, 1979, at Grand Rapids.—Decided February 6, 1980. Leave to appeal applied for.

Carlton P. Johnson, an employee of Harnischfeger Corporation, injured his right knee and was paid total disability benefits for 500 weeks. After expiration of those benefits Johnson petitioned for further benefits, alleging that he had developed pain in his left knee about two months prior to the expiration of benefits for the injured right knee. He sought compensation for permanent and total disability for loss of industrial use of both legs. The hearing referee awarded benefits, and the Worker's Compensation Appeal Board reversed, finding that Johnson had failed to present sufficient evidence of such loss of use and that he had failed to prove permanent and total disability within the statutory time period, which is "not less than 30 days before the expiration of 500 weeks from the date of injury". Johnson appealed, and the Court of Appeals affirmed in an unpublished per curiam opinion. Johnson applied to the Supreme Court for leave to appeal and that court, in lieu of granting leave to appeal, vacated the Court of Appeals decision and remanded the case to the Court of Appeals for consideration of the constructional and constitutional issues raised by Johnson in regard to the statutory time requirement for determination of permanent and total disability. 406 Mich 1002 (1979). *Held:*

The statutory scheme which requires determination not less than 30 days before 500 weeks from the date of injury of the loss of industrial use of the arms or legs but does not impose a time limitation upon such a determination of other types of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Constitutional Law § 212 *et seq.*
  73 Am Jur 2d, Statutes §§ 103, 153.
[2] 29 Am Jur 2d, Evidence § 127.
[3] 73 Am Jur 2d, Statutes § 194.
[4, 5] 81 Am Jur 2d, Workmen's Compensation § 17.
  82 Am Jur 2d, Workmen's Compensation §§ 350, 351.
[5] 81 Am Jur 2d, Workmen's Compensation § 16.
[6] 73 Am Jur 2d, Statutes §§ 181, 185.

permanent and total disability has no rational basis and, therefore, constitutes a denial of equal protection. In addition, the statute violates due process of law because it operates as a statute of limitations which deprives employees whose industrial loss of use does not arise until after the period of 500 weeks minus 30 days of their statutory and common law remedies before the right to bring suit is discovered.

Reversed and remanded.

1. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION — DUE PROCESS.

Socioeconomic legislation should be upheld in the face of an equal protection or due process challenge where the legislation is supported by any state of facts either known or which could reasonably be assumed, even though such facts may be debatable.

2. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION.

A statute is presumed to be constitutional; a party challenging a statute on equal protection grounds assumes the burden of proving that statutory distinctions between classes of persons lack a reasonable relation to a legitimate government interest.

3. STATUTES — CONSTRUCTION OF STATUTES.

Judicial construction of a statute is inappropriate where the language of the statute is clear and unambiguous and clearly reflects the legislative intent.

4. WORKMEN'S COMPENSATION — INDUSTRIAL USE OF LIMBS — STATUTES — EQUAL PROTECTION.

A statutory provision which imposes a limitation upon the time in which a determination of total and permanent loss of industrial use of the limbs must be made in order for the claimant to be eligible for worker's compensation benefits, while no such limitation period applies to other types of total and permanent disability, has no rational basis and therefore constitutes a denial of equal protection to those claiming permanent and total loss of industrial use of limbs (MCL 418.361[2][g]; MSA 17.237[361][2][g]).

5. WORKMEN'S COMPENSATION — INDUSTRIAL USE OF LIMBS — STATUTES — DUE PROCESS.

A statute which provides that a determination of total and permanent disability due to the industrial loss of use of the arms or legs must be made within 500 weeks less 30 days of the date of the injury causing such loss of use deprives claimants whose loss of use occurs after that time of their statutory and

common law remedies before their right to bring suit is discovered and is therefore violative of due process of law (MCL 418.361[2][g]; MSA 17.237[361][2][g]).

6. STATUTES — ABROGATION OF CAUSE OF ACTION.

A statute which abolishes the right to sue before the cause of action arises is sustainable only if it is intended to be an abrogation of a common law cause of action.

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for plaintiff.

*Bridges & Collins* (by *Paul A. Peterson),* for Harnischfeger Corporation and Employers Insurance of Wausau.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph M. Binno,* Assistant Attorney General, for the Second Injury Fund.

Before: V. J. BRENNAN, P.J., and R. B. BURNS and M. J. KELLY, JJ.

## ON REMAND

M. J. KELLY, J. Plaintiff was totally disabled by an injury to his right knee on December 1, 1964, and his employer paid compensation through July 1, 1974, 500 weeks after the date of injury. In August, 1974, plaintiff filed a petition for hearing, alleging loss of industrial use of both legs on May 1, 1974. At the hearing plaintiff testified that he first had pain in his left knee in May, 1974. Dr. James W. Lyons, plaintiff's orthopedic surgeon, testified by deposition that plaintiff did not complain of pain in his left knee when he was examined in April, 1974; it was not until the doctor saw plaintiff on September 17, 1974, that plaintiff complained of pain in his left knee.

Relying primarily on the testimony of Dr. Lyons,

the hearing referee found that plaintiff was permanently and totally disabled as of September 17, 1974, because of the loss of industrial use of both legs. Defendants were ordered to pay benefits from July 2, 1974, when plaintiff's previous benefits had ceased, until further order of the Bureau of Workmen's Compensation.

All parties appealed; defendants contested the finding of permanent and total disability, and plaintiff contested the date of total and permanent disability. The Worker's Compensation Appeal Board specifically considered MCL 418.361(2)(g); MSA 17.237(361)(2)(g), which provides:[1]

"(2) Total and permanent disability, compensation for which is provided in section 351 means:

* * *

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

The board then employed the test set down by the

[1] MCL 418.361(2); MSA 17.237(361)(2) states:

"(2) Total and permanent disability, compensation for which is provided in section 351 means:

"(a) Total and permament loss of sight of both eyes.

"(b) Loss of both legs or both feet at or above the ankle.

"(c) Loss of both arms or both hands at or above the wrist.

"(d) Loss of any 2 of the members or faculties enumerated in (a), (b) or (c).

"(e) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(f) Incurable insanity or imbecility.

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision *such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.* (Emphasis added.)

Supreme Court in *Burke v Ontonagon County Road Comm,* 391 Mich 103; 214 NW2d 797 (1974),[2] and after reviewing plaintiff's testimony, concluded that it contained insufficient evidence that plaintiff had lost the industrial use of both legs. Relying on Dr. Lyons' testimony, the board also concluded that plaintiff had failed to prove permanent and total disability "within the period provided by Subsection (2)(g)". It therefore reversed the referee and denied further benefits. This Court granted leave to appeal that order and in an unpublished per curiam opinion [Docket No. 77-521, January 4, 1979] found no error in the appeal board's conclusion that plaintiff had failed to meet his burden of proof under the *Burke* test.

Plaintiff asserted that the distinction drawn by the Legislature between the first six classes of total and permanent disability, § 361(2) (a)-(f), which are not subject to any statute of limitations, and the seventh, loss of industrial use of two limbs, § 361(2)(g), violates equal protection. Because we affirmed the factual findings of the WCAB, we did not address this constitutional question. This cause is now remanded here, on order of the Supreme Court, for "consideration of the constructional and constitutional issues raised by plaintiff". 406 Mich 1002 (1979). We assume that our affirmance of the factual determination of the appeal board is overruled *sub silentio.* We had

---

[2] In reaching its conclusion the board relied upon the test enunciated in *Burke v Ontonagon, supra,* at 114, which states:

"There is permanent and total loss of industrial use of both legs where, *inter alia,*

"1. An employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry.

"2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry."

concluded that the "[p]laintiff's proofs, which were taken at face value by the appeal board, merely establish that ambulation has been made more difficult for plaintiff as a result of his accident. They do not indicate that his present condition is functionally equivalent to phsyical loss of use of his legs." The Supreme Court must have found that conclusion incorrect and intended to overrule it, else why would it issue its order requiring consideration of the constitutional issue if the disability issue already foreclosed the plaintiff from any possibility of prevailing?

Subsection (2)(g), *supra,* establishes the time frame for a determination of permanency when an injured employee claims permanent and total loss of industrial use of the specified limbs: "* * * such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury." Plaintiff submits that construed as a statute of limitations, *i.e.,* that permanency must be determined *within* 500 weeks less 30 days, the provision constitutes a denial of equal protection under even the minimal rationality standard of review.

The Supreme Court, in *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 540; 273 NW2d 829 (1979), recently reaffirmed the position taken in *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978), regarding the proper judicial approach when confronted with an equal protection or due process challenge to socioeconomic legislation:

" '[I]n the face of a due process or equal protection challenge, "where the legislative judgment is drawn in question", a court's inquiry "must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it."

*United States v Carolene Products Co,* 304 US 144, 154; 58 S Ct 788; 82 L Ed 1234 (1938). * * * [W]here the legislative judgment *is supported by "any state of facts either known or which could reasonably be assumed",* although such facts may be "debatable", the legislative judgment must be accepted. *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936).' "

Various sections of the Worker's Disability Compensation Act, included within this socioeconomic legislative category, have previously been analyzed under the "rational basis" test. *Kunde v Teesdale Lumber Co,* 55 Mich App 546; 223 NW2d 67 (1974), *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959).

The legislation in question comes clothed in a presumption of constitutionality; plaintiff assumes the burden of proving that the distinctions embodied in § 361(2) (a)-(g) lack a reasonable relation to a legitimate government interest. *Cruz v Chevrolet Grey Iron Div of General Motors Corp,* 398 Mich 117; 247 NW2d 764 (1976), *Kunde, supra.*

The preliminary question is whether the statute is clear and unambiguous, since judicial construction is inappropriate when the language clearly reflects the legislative intent. *Oakland Prosecutor v 46th District Judge,* 76 Mich App 318; 256 NW2d 776 (1977), *Adrian Mobile Home Park v City of Adrian,* 94 Mich App 194; 288 NW2d 402 (1979). Both parties here present equal protection arguments based upon an interpretation of the challenged language as a statute of limitations. We agree that the language is certain; therefore, we must sustain the different treatment accorded § 361(2)(g) claimants or sever that provision creating a statute of limitations if deemed constitutionally offensive. *Eastwood Park Amusement Co v Mayor of East Detroit,* 325 Mich 60; 38 NW2d 77 (1949).

The only basis suggested by defendants for the special § 361(2)(g) statutory requirement is that it permits employers and insurance carriers to avoid stale claims. Defendants argue that the other categories of total and permanent disability are more readily apparent than loss of industrial use and thus have built-in statutes of limitation. An examination of the other listed § 361 categories, however, reveals inclusion of several other medical conditions potentially involving long-term development: total and permanent loss of sight of both eyes,[3] permanent and complete paralysis of both legs or both arms or of one leg and one arm,[4] incurable insanity or imbecility.[5] In light of other

[3] Total and permanent loss of sight of both eyes may result from injury or disease that progresses gradually, as in the case of cataracts and lens removal. Heat-ray cataracts, for example, are caused by long continued exposure to high temperatures. In the case of electric cataracts, the latent period from the date of the electrical injury to formation of cataracts has been reported to be as long as 11 years. System of Ophthalmology, Vol. 14, pp 828-835. The Michigan Supreme Court, considering the relationship of this specific type of injury to the Workmen's Compensation Act, stated: "the surgical removal of the natural lens made necessary by an injury arising out of and in the course of claimant's employment is loss of an eye within the meaning of the amended statute." *Lindsay v Glennie Industries, Inc,* 379 Mich 573, 578; 153 NW2d 642 (1967).

[4] Paralysis could also develop over a long period of time following a specific injury or contraction of an occupational disease. Lead paralysis, caused by lead poisoning, obviously entails a potentially lengthy progression, depending upon the degree and frequency of exposure. Medical literature documents, through case histories, that severe muscle atrophy may first appear as late as 16 years after occupational exposure to lead. Medical treatment with calcium often halts further deterioration, but the existing paralysis is generally irreversible. Campbell, Williams & Barltrop, *Motor Neurone Disease and Exposure to Lead,* 33 J Neurol Neurosurg Psychiat 877-885 (1970).

Manganese poisoning is an occupational disease which affects the central nervous sytem. Medical studies of this disease reveal that symptoms may first appear as late as 25 years after the onset of exposure. Chronic manganese poisoning results in permanent disabilities most frequently involving use of the lower limbs. Naby & Hassanein, *Neuropsychiatric Manifestations of Chronic Manganese Poisoning,* 28 J Neurol Neurosurg Psychiat 282 (1965).

[5] It is also common knowledge that mental disease may become totally and permanently disabling as a result of progressive deteriora-

potential long-term developing total and perma-
nent disabilities we are not persuaded by defen-
dants' argument that the first six categories of
total and permanent disability are more clearly
apparent sooner after the industrial injury, event
or disease occurs, thereby providing the employer
with notice of possible total and permanent conse-
quences to follow. In the absence of a rational
basis for the different treatment accorded claim-
ants whose disability is defined under subsection
(g), we find that imposition of a statute of limita-
tions on that class, when employees in categories
(a)-(f) are not so restricted, constitutes a denial of
equal protection.

Plaintiff's single challenge to § 361(2)(g) is
grounded on equal protection analysis, but we
believe the statute of limitations included therein
is constitutionally infirm on due process grounds
as well. To deprive employees whose industrial loss
of use does not arise until after 500 weeks minus
30 days of both their statutory and common law
remedies before the right to bring suit is discov-
ered would violate due process of law. *Dyke v
Richard,* 390 Mich 739, 746-747; 213 NW2d 185
(1973). A statute which abolishes the right to sue
before the cause of action arises is sustainable only
if intended as an abrogation of a common law
cause of action. *Oole v Oosting,* 82 Mich App 291;
266 NW2d 795 (1978). Such analysis is unreasona-
ble in the instant case, as § 361(2)(g) was enacted
for the purpose of defining a formerly unrecog-
nized class of claimants. It is highly likely that
when the Legislature added § 361(2)(g) to the act,

---

tion. Manganese poisoning is sometimes referred to as "manganic
madness", due to commonly reported compulsive behavior including
singing, dancing and fighting. Miners inflicted with the disease often
have "persisting neurological deficit despite removal from the mine."
Lauria, Joselow & Browder, *The Human Toxicity of Certain Trace
Elements,* 76 Annals of Internal Medicine 307-319 (1972).

defining a formerly unrecognized class of claimants, it included the statute of limitations as a means of confining the class to claimants with injuries that occurred within the last 500 weeks less 30 days and those injured in the future, thereby precluding resurrection of ancient claims by giving only prospective application to that section of the act. See *Clark v Chrysler Corp,* 377 Mich 140, 148; 139 NW2d 714 (1966), and *Sanders v General Motors Corp,* 80 Mich App 190, 194 fn 5; 263 NW2d 329 (1977). If the language was intended as a time limitation for the specific purpose of denying retroactivity,[6] its continued presence is unnecessary. Directed by the Supreme Court to resolve the constitutional issue presented, we find the statute of limitations imposed upon § 361(2)(g) claimants violative of both due process and equal protection guarantees.

In the instant case the WCAB found that plaintiff had failed to demonstrate total and permanent disability *within* the statutory period. We therefore remand this case to the WCAB for a determination consistent with this opinion and the standards set forth in *Burke, supra,* and *Martin v Ford Motor Co,* 401 Mich 607; 258 NW2d 465 (1977). To avoid the possibility of any confusion as to whether or not the appeal board considered all of plaintiff's proofs, including the testimony of Dr. Lyons on the question of permanent and total loss of industrial use of both legs, we instruct the board to do so anew.

Reversed and remanded.

---

[6] In *Clark, supra,* the Supreme Court did not determine the constitutionality of this construction.