JOHNSON v HARNISCHFEGER CORPORATION

Docket Nos. 64682, 64689. Argued January 7, 1981 (Calendar No. 14). —Decided September 13, 1982.

Carlton P. Johnson received 500 weeks of workers' compensation benefits from his employer, Harnischfeger Corporation, and its insurer, Employers Insurance of Wausau, for total disability as a result of an injury to his right knee in the course of his employment. The payments ended on July 1, 1974, and the plaintiff then claimed additional benefits against his employer, its insurer, and the Second Injury Fund, alleging that he suffered the loss of the industrial use of both legs. A hearing referee concluded that the plaintiff had become totally and permanently disabled on September 17, 1974, and awarded benefits from July 2, 1974. The Workers' Compensation Appeal Board reversed the order on the ground that the plaintiff had not proved that the loss of industrial use of both legs occurred within the statutory time of not less than 30 days before the expiration of 500 weeks from the date of injury. The Court of Appeals, V. J. Brennan, P.J., and R. B. Burns and M. J. Kelly, JJ., concluded that the statutory limitation imposed only on claims of loss of industrial use but not on other categories of total and permanent disability violates the constitutional guarantees of due process and equal protection (Docket No. 46342). The defendants appeal.

In opinions by Justice Williams and Chief Justice Coleman, the Supreme Court *held:*

The requirement that permanent and total loss of industrial use be determined not less than 30 days before 500 weeks from the date of injury, and the absence of a similar requirement for other categories of total and permanent disability, does not

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law §§ 748, 749.
82 Am Jur 2d, Workmen's Compensation § 17.
[2, 4] 16 Am Jur 2d, Constitutional Law § 218.
82 Am Jur 2d, Workmen's Compensation § 16.
[3, 5, 6] 82 Am Jur 2d, Workmen's Compensation §§ 350, 351, 482, 486.
[7] 4 Am Jur 2d, Appeal and Error §§ 491, 492.
82 Am Jur 2d, Workmen's Compensation § 630.

violate constitutional rights to equal protection and due process. The Legislature could legitimately create a separate category of persons suffering from permanent and total loss of industrial use from those suffering anatomical or mental losses outlined in the other six categories of total and permanent disability, since the loss of industrial use is medically, factually, and legally distinguishable. Further, the Legislature could reasonably assume that permanent and total loss of industrial use would manifest itself within the statutory period of almost ten years. The judgment of the Court of Appeals is reversed on that point.

The opinion of Justice Williams, joined by Justices Kavanagh, Levin, and Moody, remanded the matter to the appeal board for redetermination.

1. The Worker's Disability Compensation Act is socioeconomic legislation. Therefore, the burden is on the plaintiff asserting unconstitutionality to show that the statutory classification is arbitrary and does not bear a rational relation to the object of the legislation. The test for equal protection challenges to provisions of the Worker's Disability Compensation Act is whether any state of facts either known or which could reasonably be assumed affords support for the legislative judgment. The plaintiff in this case must show either that there is no reasonable relation between the statutory limit for claims of loss of industrial use and a legitimate governmental interest, or that the provision of a statute of limitations only for claims for loss of industrial use, but not for claims of the other total and permanent disabilities, is arbitrary and capricious.

2. Proof or disproof of the loss of industrial use is unlike that for a specific loss. The totality and permanency of the specific losses are readily apparent at the time of the injury or shortly after. Loss of industrial use may not be so readily apparent, and the disproof of claims may become unfeasible after a significant time has passed. The imposition of reasonable restrictions on the time for filing such claims avoids the case where it would be difficult if not impossible to determine whether the impairment of wage-earning capacity required for loss of industrial use is caused by the employment-related injury or by aging, for example. Claims which are made years after the injury on subjective medical conclusions provide little opportunity for the employer and the Second Injury Fund to contest in good faith the claim of loss of industrial use. The Legislature's decision to limit the time in which to advance such claims to avoid creating claims which are indefensible, and to protect the Second Injury Fund against such claims, is

entirely appropriate. There is a reasonable relation between the statutory period and a valid and necessary objective, and therefore the statutory classification does not violate the Equal Protection Clause.

3. The test to determine whether the statutory provision comports with due process is essentially the same. There is a reasonable governmental interest in establishing a statute of limitations to avoid indefensible claims. The Legislature has determined that the public interest is served by requiring payment of differential benefits from the Second Injury Fund only when a claimant can demonstrate permanent and total disability within a reasonable time. There is no violation of the Due Process Clause in that determination. A legislative decision to abrogate a cause of action after the time when proofs grow stale is not unreasonable. The Worker's Disability Compensation Act was designed to abrogate and replace an employee's common-law cause of action against his employer, and the enactment of the limitation in this case is justified and satisfies the requirements of the Due Process Clause.

4. It appears that the Workers' Compensation Appeal Board may not have properly applied the legal standard for determining permanent and total disability. The conclusion by the Workers' Compensation Appeal Board that the plaintiff had not sustained his burden of proof of loss of use of both legs before June 1, 1974, leaves some doubt whether it considered the testimony of the plaintiff's orthopedic surgeon on the question. Because it is not clear whether the Workers' Compensation Appeal Board considered or correctly applied the testimony of the surgeon that the plaintiff was unable to do work which required the use of his legs, the case is remanded to the Workers' Compensation Appeal Board for redetermination.

Chief Justice Coleman, joined by Justices Fitzgerald and Ryan, dissenting in part, would affirm the decision of the Workers' Compensation Appeal Board. The WCAB found that the plaintiff did not prove the existence of total and permanent disability within the prescribed limitation period. That finding precluded further payment of benefits. The opinion of the WCAB does not afford the Supreme Court an opportunity under the state constitution to speculate upon the possibility that the WCAB committed an error of law. The plaintiff's testimony did not establish the disability to have existed within the limitation period, but spoke of his condition five months later. The statement of the plaintiff's physician that the plaintiff should not do a lot of walking because of his right knee is, at best, a tenuous ground upon which to conclude that the

board committed legal error in not finding that the plaintiff had lost the industrial use of *both* legs before the expiration of the time.

95 Mich App 380; 289 NW2d 919 (1980) reversed.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — STATUTES — EQUAL PROTECTION.

The burden is on a party challenging a provision of the Worker's Disability Compensation Act on equal protection grounds to show that the classification is arbitrary and does not bear a rational relation to a permissible legislative objective (US Const, Am XIV; Const 1963, art 1, § 2; MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

2. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — STATUTES — DUE PROCESS — EQUAL PROTECTION.

The test to determine the constitutionality of a provision of the Worker's Disability Compensation Act challenged on grounds of due process or equal protection is whether any state of facts, either known or which could reasonably be assumed, supports the legislative judgment (US Const, Am XIV; Const 1963, art 1, §§ 2, 17; MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

3. WORKERS' COMPENSATION — LOSS OF INDUSTRIAL USE — TIME LIMIT — EQUAL PROTECTION.

There is no violation of equal protection by the provision of the Worker's Disability Compensation Act of a time limit only for claims of loss of industrial use, which must be "determined" not less than 30 days before the expiration of 500 weeks from the date of injury; the loss of industrial use is the only category of permanent and total disability that depends on whether the specific loss affects the injured worker's wage-earning capacity, and time limit reasonably relates to avoiding claims which become more indefensible with the passage of time (US Const, Am XIV; Const 1963, art 1, § 2; MCL 418.361[2][g]; MSA 17.237[361][2][g]).

4. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — STATUTES — DUE PROCESS.

The test to determine whether a provision of the Worker's Disability Compensation Act comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective (US Const, Am XIV; Const 1963, art 1, § 17; MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

5. WORKERS' COMPENSATION — LOSS OF INDUSTRIAL USE — TIME LIMIT — DUE PROCESS.

There is no violation of due process in the determination by the Legislature that the public interest is served by requiring payment of benefits for the loss of industrial use only when a claimant can demonstrate the permanent and total disability within the reasonable time prescribed where there is no showing that the claimant in the exercise of due diligence could not have timely discovered that he had suffered a permanent and total loss of the industrial use of two legs (US Const, Am XIV; Const 1963, art 1, § 17; MCL 418.361[2][g]; MSA 17.237[361][2][g]).

OPINION BY COLEMAN, C.J.

6. WORKERS' COMPENSATION — LOSS OF INDUSTRIAL USE — TIME LIMIT.

*A finding that a worker failed to prove the existence of the permanent and total loss of the industrial use of both legs 30 days before the expiration of 500 weeks from the date of his injury precludes an award of further benefits regardless whether the worker subsequently suffered such loss (MCL 418.361[3][g]; MSA 17.237[361][3][g]).*

7. WORKERS' COMPENSATION — CONSTITUTIONAL LAW — STANDARD OF REVIEW.

*The state constitution limits the scope of judicial review of final decisions of the Workers' Compensation Appeal Board to questions of law; absent fraud, a court may not engage in speculation regarding the factual basis for the board's decision not supported by the record (Const 1963, art 6, § 28).*

*Green, Renner, Weisse, Rettig, Rademacher & Clark* for plaintiff.

*Bridges & Collins* for defendants Harnischfeger Corporation and Employers Insurance of Wausau.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Eileen D. Zielesch* and *Joseph M. Binno,* Assistants Attorney General, for defendant Second Injury Fund.

WILLIAMS, J. We granted leave to appeal especially to consider "whether the statute of limitations contained in MCL 418.361(2)(g); MSA 17.237(361)(2)(g) is constitutionally infirm on equal protection and due process grounds."[1] Subdivision (2)(g) reads:

"(2) Total and permanent disability, compensation for which is provided in section 351 means:

\* \* \*

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision *such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.*" (Emphasis added.)

We hold that § 361(2)(g) does not violate equal protection or due process. The Legislature could legitimately create a separate category of persons suffering from permanent and total *loss of industrial use* in subsection (g), from those suffering *anatomical or mental losses* outlined in the other six categories of total and permanent disability, since that category is medically, factually, and legally distinguishable. Further, the Legislature could reasonably assume that permanent and total loss of industrial use would manifest itself within the statutory period of almost ten years. The decision of the Court of Appeals on this point is reversed. We, however, agree, but for different reasons, with the decision of the Court of Appeals to remand the matter to the Workers' Compensation Appeal Board to determine in the light of all the pertinent testimony whether the *Burke*[2] legal standard was met.

---

[1] 409 Mich 897 (1980). 1980 PA 357 renumbers the provision (3)(g) but the pertinent statutory language remains the same.

[2] *Burke v Ontonagon County Road Comm,* 391 Mich 103, 114; 214 NW2d 797 (1974).

## I. Facts

The facts in this case are undisputed. Plaintiff Carlton P. Johnson received 500 weeks of workers' compensation benefits at a final rate of $45 per week for total incapacity[3] arising from a 1959 injury to the right knee sustained while working for defendant Harnischfeger Corporation. Payments ceased on July 1, 1974.[4]

On August 14, 1974, plaintiff filed a petition for hearing with the Bureau of Workers' Compensation, alleging total and permanent disability resulting from the loss of industrial use of both his legs under MCL 418.361(2)(g); MSA 17.237(361)(2)(g).

Following a hearing and receipt of the deposition taken from plaintiff's orthopedic surgeon, the hearing referee found plaintiff totally and permanently disabled as of September 17, 1974, the date on which plaintiff had visited his physician following the expiration of the limitational period, which

[3] Apparently the closest thing to a definition of total incapacity is found in MCL 418.351; MSA 17.237(351), as follows: "While the incapacity for work resulting from a personal injury is total". In practice, total incapacity is found by a referee in the first instance and may result, it appears, from any injury. Unlike "total and permanent disability" in MCL 418.361(2); MSA 17.237(361)(2), total incapacity does not require the loss of or loss of industrial use of two members or incurable insanity or imbecility.

[4] Until the amendment of MCL 412.9; MSA 17.159 by 1965 PA 44, effective September 1, 1965, compensation for total incapacity could not exceed a period of 500 weeks. That amendment omitted the 500-week limitation and provided that "compensation shall be paid for the duration of the disability", as does the present statute, MCL 418.351; MSA 17.237(351). Before 1965, compensation beyond the 500-week limitation was obtained upon a finding of permanent and total disability.

was on July 1, 1974. Payments were ordered retroactive to July 2, 1974.

This determination was unanimously reversed on January 18, 1977, by the WCAB. The pertinent part of the order read:

"[P]laintiff has failed to sustain his burden of proof to show permanent and total disability."

The concurrent WCAB opinion, however, reversed, stating pertinently:

"From our review of the record, we make a finding of fact that plaintiff did not sustain his burden of *proof of industrial loss of use of both legs prior to the* expiration *of 500 weeks* from the date of his December 1, 1964 injury."

The Court of Appeals, in its opinion of January 4, 1979, affirmed the WCAB.[5] The opinion excerpted a sentence from the WCAB opinion as follows:

"Plaintiff's testimony above, taken at face value, does not meet the test of *Burke, supra,* in establishing permanent and total disability."

Although "plaintiff's testimony above" referred only to the plaintiff's own testimony, disregarding that of his physician, Dr. Lyons, who also testified and whose testimony was considered by the WCAB after the above quotation, the Court of Appeals reached its conclusion on the basis of the plaintiff's testimony alone as follows:

"We hold, therefore, that the appeal board did not err

[5] Unpublished opinion, Docket No. 77-521, January 4, 1979.

in concluding that plaintiff had failed to meet his burden of proof under the *Burke* test."

In passing, we note that after considering Dr. Lyons' testimony, the WCAB opinion concluded:

"Plaintiff simply has failed to sustain his burden of proof * * * within the period provided by subsection (2)(g)."[6]

This negative disposition of the threshold issue precluded the necessity of consideration of the plaintiff's constitutional arguments by the Court of Appeals.

This Court vacated the Court of Appeals judgment and remanded to the Court of Appeals, stating,

"The Workmen's Compensation Appeal Board's finding that plaintiff had not sustained his burden of proof of loss of use of both legs *within the period provided* by MCL 418.361(2)(g); MSA 17.237(361)(2)(g) requires consideration of the constructional and constitutional issues raised by plaintiff." (Emphasis in order.)[7]

The Court of Appeals, in its February 6, 1980, opinion on remand, concluded that § 361(2)(g) violated both due process and equal protection guarantees.[8] The constructional issue was not addressed. Further, the Court stated that:

"We assume that our affirmance of the factual determination of the appeal board [*i.e.,* failure to satisfy *Burke]* is overruled *sub silentio.* * * * The

[6] The Court of Appeals treated this statement as an alternate WCAB conclusion. "Furthermore, the board concluded that plaintiff had failed to prove permanent and total disability 'within the period provided by subsection (2)(g)' ".

[7] 406 Mich 1002 (1979).

[8] 95 Mich App 380; 289 NW2d 919 (1980).

Supreme Court must have * * * intended to over-rule [our affirmance], else why would it issue its order requiring consideration of the constitutional issue if the disability issue already foreclosed the plaintiff from any possibility of prevailing?" 95 Mich App 384-385.

We then granted leave to appeal, requesting the parties to address the constitutionality of the limitational provision in § 361(2)(g).[9]

## II. CONSTITUTIONALITY OF § 361(2)(g)

Plaintiff's principal contention is that § 361(2)(g) violates the constitutional guarantees of equal protection and due process. He asserts (A) that such discrimination against a class of claimants constitutes a denial of equal protection under any standard of review. He also argues (B) that due process is offended by denying the right to make a claim when the claim arises.

The Court of Appeals was unpersuaded by defendants' arguments that avoidance of stale claims is a reasonable basis for justifying the contested provision. Using the minimum rationality standard of review, the panel concluded that the potential for stale claims in other categories of total and permanent disability, with attendant problems of proof, eliminated any justification for the different treatment accorded claimants under § 361(2)(g). The Court of Appeals also held that subsection (g) denied due process largely on the ground that it could deny a worker the right to suit before his cause of action arose.

We disagree.

[9] 409 Mich 897 (1980).

For purposes of considering the constitutionality of subsection (2)(g), we will accept the construction implicitly employed by the WCAB in its opinion, namely that a claim may be made after the 30-day period so long as the claimant can prove that permanent and total loss of industrial use [in this case of both legs] existed before the commencement of the 30-day period.[10] Furthermore, we understand that this is the general practice of WCAB. *Sevegney v Robbins Flooring Co,* 1968 WCABO 366, 373. Besides, neither the defendant nor the plaintiff has contested this interpretation. Certainly, in the absence of such argument, at least for the purposes of considering the constitutionality of subsection (2)(g), this Court may properly pay deference to the WCAB's construction. *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968).

We begin our analysis by reviewing certain principles which have become axiomatic. First of all, legislation challenged on a constitutional basis is "clothed in a presumption of constitutionality." *Cruz v Chevrolet Grey Iron Division of General Motors Corp,* 398 Mich 117, 127; 247 NW2d 764 (1976). As we noted in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975):

"A classification will stand unless it is shown to be

---

[10] *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 162-163, fn 5; 294 NW2d 165 (1980), says this of subsection (g):

"This provision is not a statute of limitations determining when a claim can be asserted, but rather a requirement that the permanency of the disability must be determined at a date within about 496 weeks of the date of injury."

While it may be argued pro or con whether the language of subsection (g) sets up a statute of limitations, the decision in the instant case assumes that a claim for total and permanent disability must be determined as of a date within about 496 weeks of the date of injury.

'essentially arbitrary.' Few statutes have been found so wanting in 'rationality;' as to fail to satisfy the 'essentially *arbitrary' test.*[34]

---

[34] From 1941 to 1970, the United States Supreme Court found economic legislation to violate the equal protection clause in only one case, *Morey v Doud,* 354 US 457; 77 S Ct 1344; 1 L Ed 2d 1485 (1957)."

---

Second, the burden is on the objectors to show that the statute is arbitrary. We noted in *McAvoy v H B Sherman Co,* 401 Mich 419, 453-454; 258 NW2d 414 (1977), which dealt with the constitutionality of the "70% rule" for payment during appeal of workers' compensation cases, that:

"In the case at bar, it becomes immediately apparent that the thrust of the legislation challenged is primarily social and economic. The legislation involved deals with property rights, not fundamental rights. Therefore, the burden is on the appellants to show the classification is arbitrary and does not bear a rational relation to the object of the legislation."

Third, the proper standard to test equal protection or due process challenges to socioeconomic legislation was set forth for both as follows:

"[I]n the face of a due process or equal protection challenge, 'where the legislative judgment is drawn in question', a court's inquiry 'must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it'. *United States v Carolene Products Co,* 304 US 144, 154; 58 S Ct 778; 82 L Ed 1234 (1938). * * * [W]here the legislative judgment is supported by 'any state of facts either known or which could reasonably be assumed', although such facts may be 'debatable', the legislative judgment must be accepted. *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936)." *Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978).

## (A) EQUAL PROTECTION

Turning to the argument that the provision denies equal protection, the plaintiff bears a heavy burden. The plaintiff must show that the classification created by subsection (g) and the classifications created by subsections (a) through (f) are so arbitrary that they cannot be supported under any state of facts, either known or which could reasonably be assumed. Furthermore, if the facts are debatable, the legislative judgment must be accepted. *Davey v Detroit Automobile Inter-Ins Exchange,* 414 Mich 1; 322 NW2d 541 (1982).

Plaintiff in the instant case, to prove unconstitutionality, must show either that there is no reasonable relation between the statutory limitation in subsection (g), loss of industrial use, and a legitimate governmental interest, or that the inclusion of the limitation in subsection (g), loss of industrial use, and not one in subsections (a) through (f), specific losses, is arbitrary and capricious.

In *Redfern v Sparks-Withington Co,* 403 Mich 63, 79-80; 268 NW2d 28 (1978), this Court discussed at length the differences between various workers' disability compensation benefit categories. This Court said:

"There are two broad categories of workers' compensation benefits: scheduled benefits and general disability benefits. Scheduled benefits are awarded for specific medical losses without regard to whether there is a reduction of wage earning capacity; in general they are payable for permanent loss of a specific anatomical member or function, *e.g.,* a foot, hand, sight in one eye. General disability benefits are awarded for a loss of wage earning capacity even if there is no *specific* medical loss.

"Devastating specific losses enumerated in the statute, *e.g.,* both legs or sight of both eyes, are deemed a 'total and permanent disability'. 'Incurable insanity or imbecility' is so enumerated.

"*Sprute [v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971)] and *Borg [v Fisher Body Division of General Motors,* 1969 WCABO 1246] both make 'unfitness' for employment a precondition to qualification for total and permanent disability benefits.

"With the exception, however, of a distinctive category, 'loss of *industrial use'* of limbs, added to the total and permanent disability definition after its original formulation, entitlement to compensation for total and permanent disability does not depend on whether the loss affects wage earning capacity.

"Since scheduled benefits for all specific losses, major or relatively minor, are payable without regard to loss of wage earning capacity, except for the distinctive and atypical 'industrial use' loss, it would not be consonant with the design of the act to regard wage-earning capacity as determinative of entitlement to total and permanent disability benefits for incurable insanity and imbecility alone."

Of particular importance to the instant case is the analysis that subsections (a) through (f), loss or paralysis of an anatomical member plus incurable insanity or imbecility, all differ from subsection (g), loss of industrial use. That difference is described as follows: "All the specific losses affect the quality of life apart from wage-earning capacity." *Redfern, supra,* 81.

*Redfern* certainly establishes that the specific-loss subsections differ from the "loss of industrial use" subsection. The question we must decide is whether that difference is reasonably related to the legislative requirement of a 30-day statutory limitation for the "loss of industrial use" subsection and not for the specific-loss subsections. More precisely we must decide whether plaintiff can

show that in establishing such a relationship the Legislature acted arbitrarily.

The proof or disproof of loss of industrial use is unlike that of specific loss. The latter requires the medical determination as to the loss or paralysis of anatomical members or incurable insanity or imbecility, whereas the former requires a determination whether or not as a result of an injury a worker can continue at his former work, which is something in addition to a normal medical diagnosis. The Legislature in its wisdom decided that the proof, disproof or review of loss of industrial use as of a particular date was susceptible to becoming more difficult or impossible with the passage of time between the date of injury and the focal date but that the proof or disproof of specific loss was not. We cannot regard this as an arbitrary decision.

Generally speaking, the totality and permanency of the specific injuries described in § 361(2), subds (a)-(f) are readily apparent at the time of the accident or shortly thereafter. Of course, this is particularly true of loss of limbs. Medical verification of these afflictions is easily obtained. Loss of industrial use, however, may not be so readily apparent.

The passage of very significant periods of time makes defense of loss of industrial use claims unfeasible, since it is difficult for employers to reconstruct the circumstances of the accident and its effect on the ability of the worker to do his work.

Loss of industrial use requires proof of impaired wage-earning capacity. Such an impairment may arise from multiple sources other than a physical injury, including aging. Without imposition of reasonable time restrictions for such claims, it would

be difficult, if not impossible, to determine whether the impairment is due to an employment-related injury. Petitions based on subjective medical conclusions, arrived at years after an injury, may accurately reflect the state of the claimant's health, but they provide little opportunity for an employer to contest them in good faith. In addition, total and permanent disability claims implicate Michigan's Second Injury Fund. Placing responsibility on the fund to pay differential benefits in cases which are not susceptible of a defense could compromise the fund and destroy its effectiveness.

Avoiding the creation of indefensible claims through the passage of time is a valid and necessary objective for the establishment of a limitational period. Under such circumstances, we find it entirely appropriate that the Legislature provided "30 days less than 500 weeks" as a focal point to review a claim of permanent and total loss of industrial use. There is no violation of equal protection in interpreting § 361(2)(g) in such a manner.

### (B)

As we observed in *Shavers v Attorney General*, 402 Mich 554, 612-613; 267 NW2d 72 (1978), and repeated in *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524, 541; 273 NW2d 829 (1979), the test for equal protection and due process is essentially the same when reviewing socioeconomic legislation. In both cases, we said:

"The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. See *Michigan Can-*

*ners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Board,* 397 Mich 337, 343-344; 245 NW2d 1 (1976).

"The test to determine whether a statute enacted pursuant to the police power comports with equal protection is, essentially, the same. As the United States Supreme Court declared in *United States Dep't of Agriculture v Moreno,* 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973):

" 'Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.' (Citations omitted.)"

We have already shown that there is a reasonable relation between providing a statute of limitations in subsection (g) and none in subsections (a) through (f). Also it was indicated that there is a reasonable governmental interest in establishing a statutory limitation for subsection (g), *i.e.,* to avoid indefensible claims and to protect the stability of the Second Injury Fund.

We believe that a goal of protecting the Second Injury Fund's vitality can be legitimately taken into account in assessing the due process issue. In a similar context, involving the Silicosis and Dust Disease Fund, we rejected the due process argument in the following language:

"First we note that the fund and related tax on employers is for a valid public purpose. The preservation of important segments of Michigan's industrial base with the associated benefits to the state is a legitimate goal. This is especially true when the threat to these employers springs from statutory compensation requirements. As noted in an early unemployment compensation case, *Carmichael v Southern Coal & Coke Co,* 301 US 495, 514-515; 57 S Ct 868; 81 L Ed 1245 (1937):

" 'the requirements of due process leave free scope for

the exercise of a wide legislative discretion in determining what expenditures will serve the public interest.' " *Stottlemeyer v General Motors Corp,* 399 Mich 605, 614-615; 250 NW2d 486 (1977).

The Legislature has determined that the public interest is best served by requiring Second Injury Fund payment of differential benefits only when a claimant can demonstrate total and permanent disability at a reasonable time. There is no violation of due process in such a reasonable legislative choice.

The Court of Appeals, however, found a denial of due process, reasoning as follows:

"To deprive employees whose industrial loss of use does not arise until after 500 weeks minus 30 days of both their statutory and common-law remedies before the right to bring suit is discovered would violate due process of law. *Dyke v. Richard,* 390 Mich 739, 746-747; 213 NW2d 185 (1973). A statute which abolishes the right to sue before the cause of action arises is sustainable only if intended as an abrogation of a common-law cause of action. *Oole v Oosting,* 82 Mich App 291; 266 NW2d 795 (1978). Such analysis is unreasonable in the instant case, as § 361(2)(g) was enacted for the purpose of defining a formerly unrecognized class of claimants. It is highly likely that when the Legislature added § 361(2)(g) to the act, defining a formerly unrecognized class of claimants, it included the statute of limitations as a means of confining the class to claimants with injuries that occurred within the last 500 weeks less 30 days and those injured in the future, thereby precluding resurrection of ancient claims by giving only prospective application to that section of the act. See *Clark v Chrysler Corp,* 377 Mich 140, 148; 139 NW2d 714 (1966), and *Sanders v General Motors Corp,* 80 Mich App 190, 194, fn 5; 263 NW2d 329 (1977). If the language was intended as a time limitation for the specific purpose of denying retroactivity, its continued presence

is unnecessary." (Footnote omitted.) 95 Mich App 388-389.

We do not consider that *Dyke* is dispositive. The holding in *Dyke* is as follows:

"Accordingly we hold that an action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later." 390 Mich 739, 747.

The case at bar certainly does not come within *Dyke's* prescription. First, it is not an action for malpractice. Second, the limitation is 500 weeks minus 30 days, not 2 years. Third, there is no showing that plaintiff in the exercise of reasonable diligence could not have timely discovered that he had suffered a permanent and total loss of industrial use, if indeed he did not discover it.

Furthermore, *Dyke* was relied upon by the Court of Appeals in *Oole v Oosting,* 82 Mich App 291; 266 NW2d 795 (1978), aff'd 410 Mich 1; 299 NW2d 336 (1980), in its holding that a legislative decision to abrogate a cause of action after the passage of a period of time, when proofs grow stale, is not an unreasonable exercise of authority. Since the WDCA was, from its inception, designed to abrogate an employee's common-law cause of action, *Oole* justifies and authorizes the time limitation imposed by § 361(2)(g).

Incidentally, whether or not the Court of Appeals was right in reading *Clark v Chrysler Corp,* 377 Mich 140, 148; 139 NW2d 714 (1966), as construing subsection (g)'s second clause as only limit-

ing retroactivity of the section as a newly adopted act and not establishing a future statute of limitations, 95 Mich App 389, that conclusion was in effect overruled by the legislative re-enactment of the same limitational provision in § 361(2)(g) in the revision of the WDCA by 1980 PA 357.

To conclude, we hold subsection (2)(g) satisfies due process.

## III

The Court of Appeals, having found the statutory limitation in § 361(2)(g) unconstitutional, remanded the matter to the WCAB, because the WCAB had found that plaintiff had failed to demonstrate *Burke* disability *within* that statutory limitation. We affirm the remand for a different reason.

Whether particular testimony meets the test of *Burke* in establishing permanent and total disability is a mixed question of law and fact and consequently subject to our review. See, *e.g., Zaremba v Chrysler Corp,* 377 Mich 226; 139 NW2d 745 (1966); *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974). See, also, Joseph, *Causation in Workers' Compensation Mental Disability Cases: The Michigan Experience,* 27 Wayne L Rev 1079, 1094 (1981).

The legal standard established in *Burke v Ontonagon County Road Comm,* 391 Mich 103, 114; 214 NW2d 797 (1974), reads as follows:

"There is permanent and total loss of industrial use of both legs where, *inter alia,*
"1. An employment-related injury in one or both legs

causes pain or other condition that prevents use of both legs in industry.

"2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry."

The WCAB summarized its opinion that the *Burke* legal standard was not met in the following paragraphs:

"Plaintiff's testimony above, taken at face value, does not meet the test of *Burke, supra,* in establishing permanent and total disability. Plaintiff says his left leg 'began to bother him' around May of 1974. This statement is too vague for us to find as fact that at that time he had lost the use of that leg. Neither does the fact that plaintiff had been using a cane for three years meet the test of *Burke, supra.*"

* * *

"Dr. Lyons' testimony that the first time plaintiff complained to him of his left leg was on September 17, 1974, two-and-a-half months after 500 weeks had expired, further helps defeat plaintiff's claim, particularly in light of plaintiff's testimony that Dr. Lyons was his only doctor.

"Plaintiff simply has failed to sustain his burden of proof of total and permanent disability as required in the test of *Burke, supra,* within the period provided by subsection (2)(g)."

The testimony's reference exclusively to plaintiff's left leg undoubtedly arises from the fact that the WCAB had already found total incapacity because of plaintiff's right leg. See MCL 418.361; MSA 17.237(361).

The WCAB, in concluding that plaintiff's testimony was "too vague" to meet the *Burke* legal standard limited its consideration to two points of

evidence: (1) his left leg "began to bother him" around May of 1974; (2) his use of a cane for three years. If that were all the testimony there was, the WCAB's conclusion might be justified.

But the WCAB opinion indicates that the WCAB may not have properly applied the *Burke* legal standard, because other legally pertinent testimony was available. The other legally pertinent testimony is as follows. First, testimony of plaintiff:

1—"I lose control of it [left knee] when I try walking".

2—"I can't bend, like a knee bend. I'm having trouble walking and also it bothers me when I even sit and watch TV or in bed."

3—"They both [right and left knees] bothered me, sir".

Second, pertinent testimony of Dr. Lyons relating to the focal period of 30 days before 500 weeks:

1—"*A.* Yeah. I did make a—here's a note from '73. I said my initial impression is that he shouldn't be doing the type of work he did previously if he does a lot of walking. I said he could do a desk-type job or supervisory-type job if it did not involve a lot of walking. And this was discussed with him.

"*Q.* Your opinion hasn't changed any at this time, has it, Doctor?

"*A.* No, no."

The above additional testimony, all relating to conditions within the statutory period, certainly is much more specific than the WCAB's statement that the plaintiff's left leg "began to bother him". In fact, it indicates that both legs were injured and that plaintiff's injuries would prevent him from doing a job requiring a lot of walking, which his

former job of foreman did require—[11]his original injury even being caused by a fall from a ladder. He could only do favored work, which would not disqualify him from benefits attributable to the "permanent and total loss of industrial use of both legs". *Liesinger v Owen-Ames-Kimball Co,* 377 Mich 158; 139 NW2d 706 (1966).

The *Burke* legal standard could be said to be met if one considered the testimony adverted to except as to whether there is a causal connection between the original employment injury and the left knee injury. There is no indication of this consideration in the WCAB opinion. There is the following testimony relative to this legal requirement of *Burke:*

"*Q.* O.K. Can you relate the—is there any casual *[sic]* connection between the left knee injury and his 1959 injury?

"*A.* Well, most of the injury was on the right side at that time, but of course really at this stage the only way I could possibly relate it to that injury would be the fact that there's been more stress placed on the left leg than on the right one because of he's had to favor the right side, and if it's related at all I'd say this could be a factor. The other possibility is whether or not he actually did injure it at the time of the original injury, but I don't have very good documentation of the original injury to the left knee."

Whether this testimony, perhaps with the other testimony, in fact legally links the left knee to the employment injury requires WCAB determination,

[11] "*Q.* Mr. Johnson, I am not familiar with your background, but what was the nature of your occupation prior to your injury?

"*A.* I was a foreman at Harnischfeger.

"*Q.* Did that require you to be on your feet quite a bit?

"*A.* All the time except for the last time."

which does not appear in their opinion. It is for that reason we would remand to the WCAB.

## IV. CONCLUSION

We hold that the plaintiff failed to show that § 361(2)(g) violates either equal protection or due process.

The decision of the Court of Appeals is reversed as to the unconstitutionality of § 361(2)(g), but affirmed as to the order remanding the case to WCAB for determination consistent with this opinion on the merits.

No costs, a public question.

KAVANAGH, LEVIN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

COLEMAN, C.J. *(concurring in part and dissenting in part).* I concur in the opinion of Justice WILLIAMS except that I respectfully dissent as to part III.

The plaintiff had been paid 500 weeks of workers' compensation benefits as a result of a 1959 injury to his right knee. He last worked in 1967. The last payment was made on July 1, 1974. On August 12, 1974, the plaintiff filed a petition alleging total and permanent disability based upon loss of the industrial use of both legs as a result of the 1959 injury to his right knee. Dr. James W. Lyons, orthopedic surgeon, had been the plaintiff's physician over the years. In his deposition, he said that the plaintiff had not complained about the left knee prior to September 1, 1974—over two months after final payment of benefits. When he had last seen the plaintiff before that date, in April, 1973, the only complaints concerned the injured right knee.

The Workers' Compensation Appeal Board (WCAB) held that the plaintiff failed to show that he had a total and permanent disability within the limitation period of MCL 418.361(2)(g); MSA 17.237(361)(2)(g).[1] The WCAB stated:

"From our review of the record, we make a finding of fact that plaintiff did not sustain his burden of proof of industrial loss of both legs prior to the expiration of 500 weeks from the date of his December 1, 1964, injury.

\* \* \*

"Plaintiff's testimony above, taken at face value, does not meet the test of *Burke [v Ontonagon County Road Comm*, 391 Mich 103; 214 NW2d 797 (1974)] in establishing permanent and total disability. Plaintiff says his left leg 'began to bother him' around May of 1974. This statement is too vague for us to find as fact that at that time he had lost the use of that leg. Neither does the fact that plaintiff had been using a cane for three years meet the test of *Burke, supra.*

"James W. Lyons, M.D. and board-certified orthopedic surgeon, treated plaintiff and was deposed on December 13, 1974. He testified that he saw plaintiff September 17, 1974, and for the first time, plaintiff complained of his left leg. Dr. Lyons had previously seen plaintiff in April of 1973, and at that time plaintiff had no complaint regarding his left knee. The x-rays taken in September, 1974, were the first time the left knee had been x-rayed.

"Dr. Lyons' testimony that the first time plaintiff complained to him of his left leg was on September 17, 1974, two-and-a-half months after 500 weeks had expired, further helps defeat plaintiff's claim, particularly

[1] "(2) Total and permanent disability, compensation for which is provided in section 351 means:

\* \* \*

"(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

in light of plaintiff's testimony that Dr. Lyons was his only doctor.

"Plaintiff simply has failed to sustain his burden of proof of total and permanent disability as required in the test of *Burke, supra,* within the period provided by subsection (2)(g)."

The WCAB's conclusion is clear: regardless whether the plaintiff subsequently suffered from a loss of the industrial use of both legs, he did not prove that such a disability existed prior to June 1, 1974, which was "30 days before the expiration of 500 weeks from the date of injury". See MCL 418.361(2)(g); MSA 17.237(361)(2)(g).

My colleague, however, would remand "because other legally pertinent testimony was available" that "indicates that the WCAB may not have properly applied the *Burke* legal standard". I cannot agree that the WCAB opinion allows us an opportunity for such speculation.

The "legally pertinent testimony" upon which a remand would be premised includes three statements by the plaintiff and one statement by his doctor. Two of the three statements by the plaintiff that are quoted in my colleague's opinion are in the present tense, and were spoken on November 12, 1974. See *ante,* p 123. That date was 5-1/2 months after June 1, 1974, the date on which plaintiff was required to show that a disability existed. In light of the WCAB finding that the plaintiff did not establish that he had a permanent and total disability on June 1, 1974, it is not surprising that the WCAB did not mention this testimony concerning the plaintiff's condition five months later. While the third quoted statement is in the past tense, this statement, "[B]oth [right and left knees] bothered me, sir", see *ante,* p 123,

was merely a reiteration of testimony that the board did expressly consider.

The only other testimony in the record upon which the possibility of legal error would be premised is the following statement of plaintiff's doctor and is based on plaintiff's problem with his *right* knee:

"[H]ere's a note from '73. I said my initial impression is that he shouldn't be doing the type of work he did previously if he does a lot of walking. I said he could do a desk-type job or a supervisory-type job if it did not involve a lot of walking. And this was discussed with him."

This brief assertion that the physician's initial impression in 1973 was that the plaintiff should not do "a lot of walking" because of his right knee problem is, at best, a tenuous ground upon which to conclude that the WCAB committed legal error in not finding that plaintiff had lost the industrial use of *both* legs prior to June 1, 1974. Parenthetically, the physician never explained what he considered to be "a lot of walking" and the phrase is not free from ambiguity. However, it would be unreasonable indeed to conclude that whenever a physician advises a patient against doing "a lot of walking", the patient has thereby lost the industrial use of both legs.

The question whether the plaintiff lost the industrial use of both legs within the statutory period is a question of fact for the WCAB. See *Miller v Sullivan Milk Products, Inc,* 385 Mich 659, 666, 669; 189 NW2d 304 (1971). This Court is not free to isolate certain portions of the testimony below, draw its own factual inferences therefrom, and then rule that a remand is required because those inferences suggest the bare possibility of

legal error. We are bound by a constitutional provision that places factfinding responsibilities in the WCAB. Const 1963, art 6, § 28. See, also, *Thornton v Luria-Dumes Co-Venture,* 347 Mich 160, 162; 79 NW2d 457 (1956). We would transgress that provision if we were to remand in the present case.

We would reverse the judgment of the Court of Appeals that MCL 418.361(2)(g); MSA 17.237(361)(2)(g) violates the plaintiff's due process and equal protection rights, and would affirm the decision of the Workers' Compensation Appeal Board.

FITZGERALD and RYAN, JJ., concurred with COLEMAN, C.J.